**REED v. PESTER.**

**Civil Action No. 1221.**

District Court, E. D. Pennsylvania.

Dec. 17, 1941.

264

Thomas J. Minnick, Jr., and Joseph B. Quinn, both of Philadelphia, Pa., for plaintiff.

Paul Reilly, of Philadelphia, Pa., for defendant.

BARD, District Judge.

The plaintiff seeks to recover from the defendant the sum of $5,000, together with interest from November 5, 1934, based upon a stock assessment on the bank stock of a closed national bank.

I make the following special findings of fact:

1. The plaintiff, L. M. Reed, is the Receiver of the Commercial National Bank of Philadelphia, having been appointed by the Comptroller of the Currency of the United States, effective at the close of business on October 17, 1939, to succeed Stanley W. Root, by virtue of Section 1 of an Act of Congress, entitled "An Act authorizing the appointment of Receivers of National Banks, and for other purposes," approved June 30, 1876, 19 Stat. 63, 12 U.S.C. § 191, as is evidenced by his original commission now on file and of record in the office of the Comptroller of the Currency, Treasury Department, Washington, D. C.

2. The Commercial National Bank of Philadelphia was, and still is, a national banking corporation, duly organized and existing under and by virtue of the Acts of Congress of the United States of America, pertaining to the organization and management of National Banks, and is located at 721 Chestnut Street, Philadelphia.

3. The defendant is a citizen of the State of Pennsylvania, residing at 7380 Ridge Avenue, Philadelphia, Pennsylvania.

4. On February 28, 1933, the bank suspended payment to its depositors and placed itself on a restricted paying basis, and refused to permit withdrawals by its depositors of funds on deposit in the bank. The suspension, restriction, and refusal to permit withdrawals was never lifted and has continued to the present time.

5. On March 14, 1933, William A. Dyer was appointed Conservator of the bank by the Comptroller of the Currency of the United States of America and, by reason of his appointment,. he took possession of the assets and liabilities of the bank.

6. On October 14, 1931, the defendant, who was the owner of 500 shares of the capital stock of the bank, transferred these 500 shares of stock to Harriet Morgan.

7. Harriet Morgan gave no consideration to have these shares of stock transferred to her, but received them as a gift.

8. On or about Christmas Day, 1931, Harriet Morgan was informed by her brother-in-law, Charles B. Bennett, that 1,713 shares of the capital stock of the Commercial National Bank of Philadelphia had been transferred to her by various members of his family, including 500 shares belonging to the defendant, a son-in-law of Bennett.

9. On January 2, 1932, Harriet Morgan received a dividend check of $513.90 on the 1,713 shares of bank stock representing a dividend of thirty cents on each share of stock.

10. In January of 1932, Harriet Morgan sent a check for $150 to the defendant as a dividend on the 500 shares of stock which the defendant had transferred to her.

11. On July 1, 1932, Harriet Morgan received a dividend check for $342.60, and on January 3, 1933, another dividend check for the same amount, representing a dividend of twenty cents on each share of stock in each instance.

12. Harriet Morgan never retained any of the dividend money herself.

13. On February 28, 1933, Harriet Morgan was the registered owner of 1,713 shares of the capital stock of the bank, including 500 shares transferred to her by the defendant.

14. On February 28, 1933, the defendant was the real and beneficial owner of the 500 shares of the capital stock of the bank which was registered in the name of Harriet Morgan.

15. On September 28, 1934, the Comptroller of the Currency made an assessment and requisition upon the shareholders

of the bank for $2,000,000 to be paid by them on or before November 5, 1934, and made demand upon each and every shareholder for the par value of each and every share of capital stock held or owned by them.

16. The par value of the stock of the bank was $10 per share.

17. The defendant neglected and refused to pay the assessment, together with interest, and still refuses to pay it.

### Discussion

The action against the defendant is based upon the charge that he was the real owner of 500 shares of the stock of the Commercial National Bank of Philadelphia on February 28, 1933, the day of its failure to meet its obligations. The registered owner of these shares on that date was one Harriet Morgan, and the sole question in this proceeding was whether the defendant was the beneficial and real owner thereof.

The records of the closed bank show that on October 14, 1931, 1,713 shares of its capital stock were transferred from various persons to Harriet Morgan, including the 500 shares which were owned by the defendant. The balance of the shares thus transferred had been registered in the names of defendant's wife, of defendant as trustee for each of his two children, and of defendant's father-in-law, Charles B. Bennett. Miss Morgan was an elderly lady living in Atlantic City, New Jersey, and was a sister-in-law of Bennett and an aunt of defendant's wife. She had little, if any, estate and no income at the time of the transfer. She was not apprised of the transfer of the shares into her name until Christmas of 1931, when Bennett, who was a manufacturer and at one time a director of the bank, told her that he had transferred these shares to her and, according to her testimony, that any gain or loss thereafter on the shares would be hers.

Miss Morgan received three dividends on the shares within a period of about a year, and deposited the dividend checks in a bank in Atlantic City. She admitted that she retained none of the proceeds of these dividends. The first dividend of thirty cents a share on the 1,713 shares, or at least $150 of it, she sent to the defendant, allegedly at the request of Bennett. As to the subsequent dividends she received, she testified that she sent the money either to the Bennetts or the defendant, for the alleged reason that she wanted to repay in some measure those who had been so kind to her. It is significant, however, that she was unable to recall which members of the family, other than Bennett, had made her this gift and that she was wholly unable to explain how she apportioned the proceeds of the dividends. The bank in which Miss Morgan deposited the dividend checks had failed some time prior to this action and its records had been destroyed and, therefore, were not available at the time of the trial of this case.

Defendant's explanation of the situation was that in October of 1931 Bennett, his father-in-law, had asked him to give him his stock because he, Bennett, wished to give it away. Defendant testified that inasmuch as Bennett had been his employer and benefactor and was the "leader" of the entire family group, he acceded to this request, but asked that he be given the next dividend to be paid on the stock which was due shortly thereafter. The defendant admits receipt of a dividend payment of $150 (representing the thirty cents a share dividend on 500 shares) from Harriet Morgan in accordance with this request, but he denies that he received any portion of the two subsequent dividends which were declared and paid prior to the failure of the bank. Defendant further testified that, in addition to the shares in his own name, he likewise turned over to Bennett further shares standing in defendant's name as trustee for each of his children (as to which he apparently did not request a return of the first dividend) and that his wife likewise gave over 50 shares standing in her name to Bennett for his expressed purpose of giving them away.

On the basis of the foregoing and the other evidence in the record there can be no doubt that Harriet Morgan was merely a straw party designated by Bennett to hold title to the shares of the bank stock owned by various members of his family. Miss Morgan acknowledged that this was the first and only instance in which Bennett or members of the family had given her any stock or any gift of such very substantial value. Whether the purpose of this transfer was to avoid the possibility of assessment in the event of failure of the bank, or to effect some tax saving, or to accomplish some other end, it is clear that the beneficial ownership of the shares transferred by defendant to Harriet Morgan in October of 1931 was in no way changed as a result of that transfer. Ac-

cordingly, I find that defendant was the real and beneficial owner of 500 shares of the Commercial National Bank of Philadelphia standing in the name of Harriet Morgan at the time of the failure of that bank and that he is, therefore, liable for the assessment levied by the Comptroller of the Currency.

### Conclusions of Law

1. On February 28, 1933, the defendant was the real owner of 500 shares of bank stock in suit.

2. The defendant is obligated to pay the assessment demanded by the plaintiff.

3. Judgment should be entered in favor of the plaintiff against the defendant for $5,000, together with interest from November 5, 1934.